SHOUKRI OSMAN SALEH ABDEL-FATTAH, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 4683–09.   Filed April 27, 2010.

In 2005–2007 P, a non-U.S. citizen, was an employee of the Embassy of the United Arab Emirates (UAE) in Washington, D.C., performing for that Embassy services of a sort that are performed by employees of the U.S. Embassy in the UAE. The UAE does not impose an income tax, so employees of the U.S. Embassy in the UAE incur no income tax; but the U.S. Department of State did not certify this fact (pursuant to I.R.C. sec. 893(b)) until 2008. For 2005–2007 P filed tax returns reporting his embassy wages as income. R issued a notice of deficiency for those years based on adjustments unrelated to the embassy wages. P filed a petition in which he contends that the embassy wages are exempt from income tax under I.R.C. sec. 893. The parties agree that P satisfied the three requirements for exemption from income tax under I.R.C. sec. 893(a). *Held*: I.R.C. sec. 893 does not require, as a condition of a claim of exemption by an employee of a foreign government, the U.S. Department of State's certification of reciprocal exemption by the foreign country under I.R.C. sec. 893(b). Because P satisfied the three requirements of I.R.C. sec. 893(a), his wages from working for the UAE Embassy from 2005–2007 are exempt from income tax.

*Hamilton Loeb* and *Anne C. Loomis*, for petitioner.
*Lindsey D. Stellwagen*, for respondent.

OPINION

GUSTAFSON, *Judge*: The Internal Revenue Service (IRS) issued to petitioner Shoukri Osman Saleh Abdel-Fattah a notice of deficiency pursuant to section 6212,[1] showing the IRS's determination of the following deficiencies in income tax, additions to tax for failure to file under section 6651(a)(1), and accuracy-related penalties under section 6662 for tax years 2005, 2006, and 2007:

---

[1] Unless otherwise indicated, all citations of sections refer to the Internal Revenue Code (26 U.S.C.) in effect for the years in issue, and all citations of Rules refer to the Tax Court Rules of Practice and Procedure.

190

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Accuracy-related penalty sec. 6662 |
|------|-----------|----------------------------------|-------------------------------------|
| 2005 | $6,428 | - - - | $1,285.60 |
| 2006 | 6,465 | $343.50 | 1,293.00 |
| 2007 | 6,858 | - - - | 1,371.60 |

Mr. Abdel-Fattah brings this case pursuant to section 6213(a), asking this Court to redetermine those deficiencies. After various concessions, the only issue for decision is whether Mr. Abdel-Fattah's wages paid by the Embassy of the United Arab Emirates (UAE) are exempt from income tax under section 893. That issue is currently before the Court on the parties' cross-motions for summary judgment. For the reasons explained below, we will grant Mr. Abdel-Fattah's motion and deny respondent's motion.[2]

## Background

The following facts are based on the parties' stipulations (which we incorporate herein by this reference) and on the assertions in the parties' motion papers that are supported in accordance with Rule 121 and as to which the opposing party did not raise any genuine issue of material fact. At the time he filed his petition, Mr. Abdel-Fattah resided in Virginia.

### The UAE and taxes

The United Arab Emirates was formed as a union of separate emirates in 1971 and 1972. Since its founding, the UAE has not imposed any income tax on individual income. This non-taxation applies both to UAE nationals and to foreign individuals who work in the UAE, including persons who are employed by the U.S. Embassy or consulate in the UAE.

The UAE opened its Embassy in Washington, D.C., in 1974; and in 1977 it became a party to the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227. Under that convention, the administrative and technical and service staff employed by the Embassy of the UAE was considered exempt from U.S. tax starting in 1977.

---

[2] If Mr. Abdel-Fattah's motion were denied, then certain substantiation issues would have to be resolved. Because we grant his motion, those issues are moot.

However, in April 1991 the U.S. Department of State (State Department) announced a change in its policy concerning the interpretation of the relevant provision of the Vienna Convention, so that A–2 visa holders were no longer eligible for exemption from tax under the Vienna Convention. In 1991 the State Department invited embassies to submit certificates of reciprocity (which would result in a certification of exemption under the Code—viz., section 893— rather than under the Vienna Convention); but the UAE Embassy did not submit a certificate of reciprocity or request such certification from the State Department until after the years at issue.

*Mr. Abdel-Fattah's employment and tax returns*

Mr. Abdel-Fattah is an Egyptian national, and he was in the United States as a nonresident alien on an A–2 visa during the years in issue. Except for six months in 2006 during which he was unemployed, Mr. Abdel-Fattah was employed by the UAE Embassy from 2000 through the years at issue. In the three years at issue he worked for the UAE Embassy as a security guard and as a driver.

Employees of the U.S. Government Embassy in the UAE performed services similar to Mr. Abdel-Fattah's services as a driver and security guard. Like everyone else in the UAE, those U.S. employees were not subject to income tax by the UAE.

For each of the years 2005, 2006, and 2007 Mr. Abdel-Fattah filed a Form 1040, U.S. Individual Income Tax Return[3]—the latest in April 2008—on which he reported his UAE Embassy wages. His returns reported overpayments of tax and claimed refunds.

*State Department certification*

As of August 2008 several UAE Embassy employees (including Mr. Abdel-Fattah) had received inquiries from the IRS. In response, on August 14, 2008, the UAE Embassy requested from the State Department a certification under

---

[3] A non-resident alien like Mr. Abdel-Fattah should use Form 1040NR, U.S. Nonresident Alien Income Tax Return. Unlike the Form 1040NR, the Form 1040 that Mr. Abdel-Fattah filed includes certain credits for which non-resident aliens are ineligible. Mr. Abdel-Fattah concedes he wrongly claimed items on Form 1040, and we therefore do not address further the distinctions between Form 1040 and Form 1040NR.

section 893(b). On September 26, 2008—i.e., six weeks after the request and nine months after the end of the latest year at issue—the State Department issued such a certification, signed by the Director of the Office of Foreign Missions, which read:

Acting pursuant to Department of State Delegation of Authority 285 (October 31, 2005), I hereby certify to the Secretary of the Treasury, in accordance with 26 U.S.C. § 893(b), that the government of the United Arab Emirates does not tax the wages, fees or salaries of employees of the United States Embassy and Consulate in the United Arab Emirates received as compensation for their official services to the United States. I further certify that such employees perform services of a character similar to those performed by employees of the Embassy of the United Arab Emirates and its consulates in the United States.

The State Department delivered the certification to the UAE Embassy on October 1, 2008, and delivered it to the U.S. Department of the Treasury on March 10, 2009.

*Notice of deficiency*

In June 2008 the IRS had commenced an examination of Mr. Abdel-Fattah's 2006 return. Eventually the IRS examined all three years (2005, 2006, and 2007), and in December 2008 the IRS issued a notice of deficiency addressing all three years. By that time the Secretary of State had already issued the certification as to the UAE, but the IRS did not treat it as retroactive. Consequently, the deficiency notice did not reduce Mr. Abdel-Fattah's income by the amount of his UAE Embassy wages (which he had reported) but rather made other adjustments, adverse to Mr. Abdel-Fattah, that increased his tax liability (all of which Mr. Abdel-Fattah concedes for purposes of this motion).

*Tax Court petition*

In response to the IRS's December 2008 notice of deficiency, Mr. Abdel-Fattah filed a timely petition in this Court. His petition asserts that his UAE Embassy wages are exempt from income tax under section 893.

## *Discussion*

Section 893(a) provides a tax exemption for wages that satisfy certain conditions, and Mr. Abdel-Fattah's wages satis-

fied all those conditions during the years in issue. Section 893(b) requires the Secretary of State to certify two of those three conditions, but as of the years in suit the Secretary of State had not yet certified those conditions. We must decide whether, under section 893, the certification required in subsection (b) is a prerequisite to the exemption provided in subsection (a). We hold that it is not, under the plain language of section 893.[4]

## I.  *Summary judgment standards*

Where the pertinent facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary trial. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Rule 121 provides for summary judgment in terms equivalent to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment may be granted where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); see *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); *Zaentz v. Commissioner*, 90 T.C. 753, 754 (1988). In this case the facts are largely stipulated, and the parties acknowledge that there are no genuine issues of material fact.[5]

Where a motion for summary judgment involves an issue of foreign law (here, the UAE's non-taxation of individual income), we look to Rule 146 (in pari materia with rule 44.1 of the Federal Rules of Civil Procedure). Where "an issue concerning the law of a foreign country" is raised, "[t]he Court's determination shall be treated as a ruling on a ques-

---

[4] In the alternative, if the section 893(b) certification *is* a condition of the section 893(a) exemption, petitioner argues: that the State Department's September 2008 certification of UAE reciprocity is an "administrative determination * * * relating to the internal revenue laws" under section 7805(b)(8); that the IRS made no effective prescription that it would be applied without retroactive effect; that there is no valid basis for non-retroactive application; and that non-retroactive application is inconsistent with longstanding administrative practice. Respondent disputes each of these propositions, and argues that, in any event, non-retroactive application of the certification would be reviewed for abuse of discretion—which proposition petitioner disputes. Respondent contends that retroactive application would perversely benefit noncompliant taxpayers and punish compliant taxpayers. Because we decide that the section 893(b) certification is not a prerequisite to the section 893(a) income tax exemption, we need not reach this alternative argument as to retroactive application of the State Department's certification. Likewise, since the employment tax exemption is not before us, we do not decide whether a State Department certification could have retroactive effect for purposes of section 3121(b)(12)(B).

[5] Respondent stated that the only disputed facts concern alleged delay or inaction by the State Department; but Mr. Abdel-Fattah has made clear that he makes no such allegations, and he affirms that there is no factual dispute regarding the section 893 issue.

tion of law", Rule 146, rather than fact, "so that appellate review will not be narrowly confined by the 'clearly erroneous' standard", Fed. R. Civ. P. 44.1, Advisory Committee Notes (1966 amendment). However, Rule 146 permits the consideration of "testimony". Testimony about the law is normally not permitted, see *O'Donnabhain v. Commissioner*, 134 T.C. 34, 56 (2010), but Rule 146 permits such testimony, in continuity with the former rule that foreign law was treated as a factual matter, see *Black Diamond S.S. Corp. v. Robert Stewart & Sons*, 336 U.S. 386, 397 (1949). Moreover, the Court is not required to take judicial notice of foreign law of which the parties have not made a showing. See *Afshar v. Commissioner*, T.C. Memo. 1981–241, 41 T.C.M. (CCH) 1489, 1503 (and cases cited thereat) ("where neither party has offered any material with respect to the applicable foreign law, we need not take judicial notice of such law"), affd. without published opinion 692 F.2d 751 (4th Cir. 1982).

As a result, the procedure for establishing foreign law remains analogous to the procedure for establishing facts. For purposes of summary judgment under Rule 121, where the moving party (here, Mr. Abdel-Fattah) makes a credible showing of foreign law (the UAE's non-taxation of individual income) and the non-moving party makes no dispute, we can determine foreign law on the basis of the movant's showing.

## II. *Taxation of foreign government employees*

### A. *Pre-1934 income tax and customs regulations*

After the income tax was enacted and until 1934, the Treasury Department granted an exemption from U.S. income tax to employees in the consular offices of any foreign country that granted a reciprocal exemption from its own income tax to U.S. consular employees who worked in that country. This exemption was not based on any statute but was granted as a matter of administrative policy. The policy was embodied in regulations that provided as follows:

All foreign consular officers and employees in foreign consulates in the United States who are nationals of the States appointing them are exempt from Federal income tax with respect to the wages, fees, and salaries received by them in compensation for their consular services, provided the appointing State grants a similar exemption to citizens of the United

States who are American consular officers or employees of the American consulates in such State. * * *

Regs. 65, art. 86 (1924). [6] The regulation did not state any requirement as to certification, by the State Department, of the foreign country's reciprocal exemption.

During the same period the Customs Regulations of 1931 afforded a "somewhat comparable privilege" [7] allowing exemption from customs on baggage and articles imported by government representatives arriving in the United States. Article 425 is ambiguous about the necessity of State Department approval of a "privilege" as to baggage: It refers to "application to the Department of State"; but it appears to authorize the privilege upon a mere showing of "their credentials or other proof of identity". Article 426 more explicitly provides that a privilege as to "Imported articles" will be allowed "only when application is made therefor through the Department of State".

B.  *Income tax statutes*

When the Treasury Department concluded that this policy, though "meritorious from the standpoint of administrative policy or expediency", was "indefensible from the standpoint of law", it announced that it would cease to allow the exemption. [8] Corrective legislation was proposed, as to which the Department of State "hope[d] that you [the Chairman of the Committee on Ways and Means] will find it possible to bring about its passage by the House of Representatives at an early date." [9] The Department of the Treasury had its own reasons to favor the proposal. The Treasury Department advised Congress:

 A demand has been made upon the United States Treasury attaché and several American members of his staff for the payment of income taxes to

---

 [6] Regs. 77, art. 641 (1932), included an identical provision.

 [7] See H. Rept. 1759, 74th Cong., 1st Sess. 3 (1935), 1939–1 C.B. (Part 2) 891, 892 ("A somewhat comparable privilege is afforded by the Customs' Regulations of 1931, specifically articles 425 and 426, extending special customs courtesies and free entry privileges to representatives of our own and foreign governments who arrive in the United States on official business"). Because the Congress enacting the income tax exemption referred to these customs regulations as creating only a "*somewhat comparable* privilege" (emphasis added), we infer that the details of the customs regulations do not disclose the legislative intent as to the income tax exemption.

 [8] See letter from the Treasury Department to the Secretary of State (Aug. 7, 1934) 4–5, described in H. Rept. 1759, *supra* at 3, 1939–1 C.B. (Part 2) at 892.

 [9] See letter from State Department to the Chairman, Committee on Ways and Means (Aug. 9, 1935), quoted in H. Rept. 1759, *supra*, at 2, 1939–1 C.B. (Part 2) at 892.

the Austrian Government. These officers are, of course, paying income taxes to the United States, and payment of the Austrian taxes will impose a real hardship.

If H.R. 7998 is enacted into law, however, it will be possible for our Department of State to advise the Government of Austria that representatives of that Government, employed in the United States and of a rank comparable to that of the Treasury attaché and his staff, would be exempt from taxation upon the salaries they receive in the United States from the Government of Austria. I am informed that the Austrian Government has intimated that if this advice is received taxes will not be levied upon the official income of our representatives in that country.

In view of these circumstances, I urgently recommend that favorable consideration be given by your [Ways and Means] committee to H.R. 7998 with a view to its enactment at the earliest practicable date.

Very truly yours,

L.W. Robert, Jr.
*Acting Secretary of the Treasury*[10]

The House report explained that the proposed new statutory exemption (H.R. 7998) "was formerly covered by Treasury regulations." H. Rept. 1759, 74th Cong., 1st Sess. 3 (1935), 1939–1 C.B. (Part 2) 891, 892. Section 116 of the Revenue Act of 1934 was amended to add a new subsection (h), as follows:

SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this title:

\*   \*   \*   \*   \*   \*   \*

(h) COMPENSATION OF EMPLOYEES OF FOREIGN GOVERNMENTS.—Wages, fees, or salary of an employee of a foreign government (including a consular or other officer, or a nondiplomatic representative) received as compensation for official services to such government—

(1) *If* such employee is not a citizen of the United States; and

(2) *If* the services are of a character similar to those performed by employees of the Government of the United States in foreign countries; *and*

(3) *If* the foreign government whose employee is claiming exemption grants an equivalent exemption to employees of the Government of the United States performing similar services in such foreign country.

*The Secretary of State shall certify* to the Secretary of the Treasury the names of the foreign countries which grant an equivalent exemption to the

---

[10] See letter from Treasury Department to the Chairman, Committee on Ways and Means (Aug. 9, 1935), quoted in H. Rept. 1759, *supra* at 2, 1939–1 C.B. (Part 2) at 892.

employees of the Government of the United States performing services in such foreign countries, and the character of the services performed by employees of the Government of the United States in foreign countries.
  [Act of Aug. 27, 1935, ch. 767, 49 Stat. 908; emphasis added.]

The flush language referring to the Secretary of State was thus in a single subsection with the rest of the provision, but was not stated as one of the numbered conditions for the exemption.

  The next year, when the same Congress (the 74th) enacted the Revenue Act of 1936, ch. 690, 49 Stat. 1648, it included an almost identical provision, but it divided subsection (h) into two paragraphs and gave them headings:

SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this title:

*   *   *   *   *   *   *

(h) COMPENSATION OF EMPLOYEES OF FOREIGN GOVERNMENTS.—
  *(1) RULE FOR EXCLUSION.*—Wages, fees, or salary of an employee of a foreign government (including a consular or other officer, or a nondiplomatic representative) received as compensation for official services to such government—
    (A) *If* such employee is not a citizen of the United States; and
    (B) *If* the services are of a character similar to those performed by employees of the Government of the United States in foreign countries; *and*
    (C) *If* the foreign government whose employee is claiming exemption grants an equivalent exemption to employees of the Government of the United States performing similar services in such foreign country.
  *(2) CERTIFICATE BY SECRETARY OF STATE.—The Secretary of State shall certify* to the Secretary of the Treasury the names of the foreign countries which grant an equivalent exemption to the employees of the Government of the United States performing services in such foreign countries, and the character of the services performed by employees of the Government of the United States in foreign countries.
  [Emphasis added.]

In 1939 Congress reenacted the identical income tax exemption in section 116(h) of the Internal Revenue Code of 1939. [11]

---

[11] Section 116(h) was amended in 1945 to exempt the income of employees of international organizations (such as the United Nations), in addition to employees of foreign governments. See Act of Dec. 29, 1945, ch. 652, sec. 4, 59 Stat. 670; *Ying v. Commissioner*, 25 F.3d 84, 86–87 (2d Cir. 1994), affg. in part and revg. in part 99 T.C. 273 (1992).

In 1954 Congress reenacted the income tax exemption in section 116(h) of the 1939 Code, with no significant change, [12] as section 893 of the Internal Revenue Code of 1954. It has thereafter appeared without relevant amendment as section 893, and subsections (a) and (b) thereof provide as follows:

SEC. 893. COMPENSATION OF EMPLOYEES OF FOREIGN GOVERNMENTS OR INTERNATIONAL ORGANIZATIONS.

(a) RULE FOR EXCLUSION.—Wages, fees, or salary of any employee of a foreign government or of an international organization (including a consular or other officer, or a nondiplomatic representative), received as compensation for official services to such government or international organization shall not be included in gross income and shall be exempt from taxation under this subtitle if—

(1) such employee is not a citizen of the United States * * *; and

(2) in the case of an employee of a foreign government, the services are of a character similar to those performed by employees of the Government of the United States in foreign countries; and

(3) in the case of an employee of a foreign government, the foreign government grants an equivalent exemption to employees of the Government of the United States performing similar services in such foreign country.

(b) CERTIFICATE BY SECRETARY OF STATE.—The Secretary of State shall certify to the Secretary of the Treasury the names of the foreign countries which grant an equivalent exemption to the employees of the Government of the United States performing services in such foreign countries, and the character of the services performed by employees of the Government of the United States in foreign countries.

Thus, as has been the case since 1936, the statute provides the "Rule for Exclusion" in subsection (a) and instructs the Secretary of State to certify reciprocity in a separate subsection (b). That certification is not presented in subsection (a) as one of the conditions for the exemption; and section 893 does not explicitly provide that the wages shall be exempt only "if" the Secretary certifies reciprocity (unlike the social security tax provisions, discussed next).

C. *Employment tax statutes*

The income tax provision in section 893 may be contrasted with the corresponding employment tax provisions. In the

---

[12] In enacting new section 893 as a stand-alone section, Congress included in section 893 the introductory language from section 116 that specified that such compensation is not included in gross income and is exempt from income tax.

1930s as now, the income tax and employment taxes were distinct; and though the compensation of foreign government employees was made exempt from income tax by section 116(h), no equivalent exemption from Social Security tax had yet been enacted.[13] Congress addressed that gap in the Social Security Act Amendments of 1939, ch. 666, sec. 606, 53 Stat. 1383, which revised the definition of "employment" in section 1426(b) of the 1939 Code by adding new exceptions in paragraphs (11) and (12):

> (11) Service performed in the employ of a foreign government (including service as a consular or other officer or employee or a nondiplomatic representative);
> (12) Service performed in the employ of an instrumentality wholly owned by a foreign government—
>     (A) *If* the service is of a character similar to that performed in foreign countries by employees of the United States Government or of an instrumentality thereof; and
>     (B) *If the Secretary of State shall certify* to the Secretary of the Treasury that the foreign government, with respect to whose instrumentality and employees thereof exemption is claimed, grants an equivalent exemption with respect to similar service performed in the foreign country by employees of the United States Government and of instrumentalities thereof * * *.
> [Emphasis added.]

These employment tax exceptions survive verbatim in current section 3121(b)(11) and (12) (and in identical exceptions to the Federal Unemployment Tax in current section 3306(c)(11) and (12)), and they are incorporated by reference into an exemption from self-employment tax, section 1402(c)(2)(C). These employment tax provisions bear two obvious differences from the income tax provision in section 116(h) (now section 893). First, service performed in the direct employ of a foreign government is simply stated in paragraph (11) to be excepted from the Social Security tax— without any stated conditions involving citizenship or the reciprocity of the foreign government's employment taxes.[14]

---

[13] Respondent explains, "the U.S. Government is not authorized under the U.S. Constitution to pay foreign employment taxes on behalf of its employees. At the time of enactment and today, foreign governments did not pay U.S. employment taxes based on claims of foreign sovereignty. As a matter of reciprocity and practicality, Congress relieved foreign governments from payment of the employer's portion of U.S. social [security] taxes."

[14] The unconditional character of the exception for employees of foreign governments is quite clear in the legislative history. The House Report (H. Rept. 728, 76th Cong., 1st Sess. 61 (1939)), explains the amendments to section 1426(b)(11) and (12) in the Social Security tax statute by a cross-reference to the corresponding amendments to the Social Security *benefits* provisions,

Second, certification by the Secretary of State is made one of two explicit conditions for the exception for service performed for an instrumentality of the foreign government (i.e., "*If* the Secretary of State shall certify" reciprocity (emphasis added)).

In 1943, when employers began to be required to withhold income tax from employee wages, Congress exempted wages for services that U.S. citizens and residents performed for a foreign government and wages earned by certain nonresident aliens. See former sec. 1621(a)(5), (6), and (7), enacted by the Current Tax Payment Act of 1943, ch. 120, sec. 2(a), 57 Stat. 126. Under current section 3401(a)(5), foreign governments are unconditionally exempted from the duty to withhold income tax from the compensation of U.S. citizens and residents. Under section 3401(a)(6), foreign governments are exempted from the duty to withhold income tax from the compensation of nonresident aliens only "as may be designated by regulations prescribed by the Secretary", but those regulations make the exemption unconditional. See 26 C.F.R. sec. 31.3401(a)(5)–1(a)(2), Employment Tax Regs. That is, foreign governments are exempt from income tax withholding whether or not the State Department has certified reciprocity.

## III. *Lack of regulatory guidance on the income tax exemption*

The income tax regulations promulgated under section 893—26 C.F.R. section 1.893–1, Income Tax Regs.—shed no light on our issue, because they simply restate the statute. Mr. Abdel-Fattah stresses that section 1.893–1(a) puts the conditions for the exemption in a subparagraph (1) ("Exempt from tax") and sets out the duty of the Secretary of State to certify reciprocity in the separate subparagraph (2) ("Certificate by Secretary of State"). However, in this regard the regulation simply mirrors the statute, and if the wording of the provisions in the regulation is meaningful, it is meaningful only because the corresponding wording of the statute is meaningful. If the corresponding wording of the statute does

---

section 209(b)(11) and (12). The benefits amendment is explained as follows: "Paragraph (11) excepts service performed in the employ of a foreign government, and paragraph (12) similarly excepts, on a basis of reciprocity, service performed in the employ of an instrumentality wholly owned by a foreign government." *Id.* at 48–49. To the same effect, see S. Rept. 734, 76th Cong., 1st Sess. 58, 74 (1939).

not have the significance that Mr. Abdel-Fattah urges, then the regulation likewise does not have that significance. Thus, the regulation does not add anything on this point.

The parties cite no published guidance of the IRS (such as revenue rulings) that address the issue in this case. Rather, Mr. Abdel-Fattah asks us to consider several private letter rulings in support of his position. We decline to do so in light of section 6110(k)(3), which provides:

> (3) PRECEDENTIAL STATUS.—Unless the Secretary otherwise establishes by regulations,[15] a written determination *may not be used or cited as precedent*. [Emphasis added.]

We will not consider the private letter rulings that Mr. Abdel-Fattah proffers.

## IV. *Interpretation of section 893*

### A. *Two forms of certification statutes*

Where a tax statute provides a benefit, states conditions for its application, and provides that a government official shall certify the fulfillment of those conditions, that certification may take one of two alternative characters. We find that, to be better able to put section 893 into perspective, it is helpful to consider examples of statutory provisions of both kinds.

#### 1. *Statutes in which certification is a prerequisite*

Certification is sometimes required as a prerequisite to a tax benefit provided in the Code. Where a statute is of this sort, the absence of the certification precludes the claiming of the benefit. For example, the employment tax exemption of section 3121(b)(12)(B), by its terms, applies only "*if* the Secretary of State shall certify * * * that the foreign government * * * grants an equivalent exemption". (Emphasis added.) Thus, certification is made an explicit condition of the exemption. Respondent contends that section 893 is a

---

[15] By regulation, taxpayers are permitted to cite and rely on published Revenue Rulings. See 26 C.F.R. sec. 601.601(d)(2)(v)(*d*), Statement of Procedural Rules ("Revenue Rulings * * * are published to provide precedents to be used in the disposition of other cases, and *may be cited and relied on for that purpose*" (emphasis added)). However, the regulations applicable to any other "written determination" (including a "ruling" that is "issued to a taxpayer"), see 26 C.F.R. sec. 301.6110–2(a), (d), Proced. & Admin. Regs., provide the default rule that a "written determination may not be used or cited as precedent", 26 C.F.R. sec. 301.6110–7(b), Proced. & Admin. Regs.

provision of this sort and that the Secretary of State's certification of reciprocity is a prerequisite to the exemption benefit.

Statutes of this sort—requiring certification as a prerequisite [16]—have certain advantages of convenience and administrability. Rather than assigning to the tax collector the task of making, in the first instance, difficult determinations that may be well outside his knowledge or expertise, such a statute commits the determination to the agency with the relevant subject-matter expertise. However, such statutes may also have corresponding disadvantages. The tax benefit may be denied, even in a circumstance clearly within Congress's intention to grant the benefit, because a certification is lacking as a result of the certifying official's delay or error, or of a taxpayer's failure to comply with the official's rules for requesting certification, or (depending on the statute) of a third party's failure to make the certification request.

### 2. *Statutes in which certification is not a prerequisite*

Mr. Abdel-Fattah contends that section 893(b) is a provision of a different sort—i.e., one in which the absence of the certification does not preclude the claiming of the benefit. For example, taxes on firearms are not imposed on devices that "the Secretary finds" have certain characteristics, sec. 5845(a), (f). Pursuant to 27 C.F.R. sections 479.24 and 479.25 (2009), a taxpayer requests such a determination from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), but before ATF makes any ruling, the manufacturer may claim and sue for a refund of firearms tax. See, e.g., *Blakley v. United States*, 593 F.3d 1337 (Fed. Cir. 2010); 27 C.F.R. sec. 70.123 (2009). Congress certainly committed to ATF the duty of classifying firearms, but ATF's ruling is not a prerequisite to a taxpayer's claim and is not immune from the taxpayer's challenge. [17]

---

[16] See also, e.g., *Nielsen-True Pship. v. Commissioner*, 109 T.C. 112, 120–125 (1997) (former sec. 29(c)(2)(A) required a determination as a prerequisite for the credit), affd. sub nom. *True Oil Co. v. Commissioner*, 170 F.3d 1294 (10th Cir. 1999); *Manor Care, Inc. v. United States*, 89 Fed. Cl. 618, 623 (2009) (certification by a State employment security agency is a prerequisite to the work opportunity credit under sec. 38(b)(2) for wages paid to "a qualified SSI recipient" under sec. 51(d)(1)(H)).

[17] See also, e.g., sec. 7428 (declaratory remedy by which an organization claiming tax-exempt

Continued

A statute that allows a tax benefit without certification may have advantages and disadvantages that are converse to those of the first sort of statute. That is, this latter sort of statute may require the tax collector or a reviewing court to decide, without prior ventilation by subject-matter experts in an agency, matters that may be outside the tax specialist's expertise (such as firearms classification); but on the other hand these statutes assure that the vagaries of a certification process do not block the intended benefit of the statute.

Thus, both of these approaches appear in different provisions in the Internal Revenue Code. We now examine section 893 to see which approach is reflected there.

B. *Analysis of certification in section 893*

1. *The language of section 893 does not condition the income tax exemption on State Department certification.*

In section 893 the exemption is not explicitly described as conditional, as if it depended on certification by the Secretary of State; it does not create the exemption only "if the Secretary of State shall certify" as does section 3121(b)(12)(B). Certification is not explicitly stated to be part of the exemption qualification (as in section 51(d)(9) ("'qualified SSI recipient' means any individual who is certified")). Rather, section 893(a) provides for an exemption "if" three conditions are met (not including certification) and then comes to a full stop. Certification is not a fourth "if" in the list but instead is addressed thereafter in subsection (b). Section 893(a) provides an exemption, and section 893(b) requires action by the Secretary of State but does not purport to qualify the exemption or to take it away in any instance. We conclude, therefore, that under the plain language of the statute, certification is not a condition or prerequisite of the exemption.[18]

Mr. Abdel-Fattah's argument about the language of the statute stresses that the certification provision is in a subsection after and separate from the subsection imposing

status under sec. 501(c)(3) may challenge the IRS's adverse ruling or failure to rule on the organization's application for recognition of exempt status); sec. 7478 (declaratory remedy by which a State or city that claims that interest on its bonds qualifies for exclusion under sec. 103 may challenge the IRS's adverse determination or failure to determine).

[18] However, certification, when present, will dramatically simplify a taxpayer's proof of section 893(a)(2) and (3).

three express conditions for the exemption and stresses that the heading "Rule for Exclusion" is assigned to subsection (a) only. We should not exaggerate the significance of the subdivision and the placement of the heading since, as the Supreme Court explained in *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R.*, 331 U.S. 519, 528–529 (1947),

headings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles. Factors of this type have led to the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text. * * * For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

In the case of section 893, however, the headings are not at any variance with the text. Section 116(h) was originally drafted in 1934 in such a way—with the State Department certification being stated after, and distinctly from, the three "if" conditions—that it was susceptible of being split neatly and easily into two paragraphs (in 1936), without any rewording whatsoever. The headings added in 1936 correspond to the text, in that the text of paragraph (1) with its three explicit conditions *does* describe (as the heading indicates) the "Rule for exclusion"; and the text of paragraph (2) does separately call for a "Certificate by Secretary of State". This is an instance in which the headings "are of some use for interpretative purposes", *Wallace v. Commissioner*, 128 T.C. 132, 140–141 (2007), and they confirm our reading of the text of the statute.

   2. *The language of section 893 differs from that of comparable contemporaneous provisions.*

This reading of the income tax statute—i.e., that the certification in section 893(b) is not a prerequisite to the benefit provided in section 893(a)—is confirmed by comparison to the different language Congress used five years later in 1939 when it provided a reciprocal exception from Social Security

tax. Then-section 1426(b)(12)(B) (now section 3121(b)(12)(B)) excepted certain service for foreign instrumentalities—

*If the Secretary of State shall certify* to the Secretary of the Treasury that the foreign government, with respect to whose instrumentality and employees thereof exemption is claimed, grants an equivalent exemption * * *. [Emphasis added.]

That language (unlike the language of section 893) plainly makes the certification a condition of the exception. Congress could have used such language in section 893, but it did not. To read the statute as if it had been so worded would be not to interpret it but to correct it, and we decline to do so.

The Congress that enacted the statute in 1934 had before it both (1) the existing income tax regulations, which had not explicitly required State Department certification of reciprocity, and (2) the customs regulations that provided a "somewhat comparable privilege" (see *supra* note 7) that, in some particulars, was available "only when application is made therefor through the Department of State". In creating the income tax exemption, Congress followed the model of the income tax regulation and did *not* make the exemption available "only when" the State Department had certified reciprocity. Instead, the language (now in section 893(a)) that creates the exemption is silent about the State Department.

Respondent defends his different interpretation by arguing that section 893 is simply "less precisely drafted" than section 3121(b)(12), but that begs the question. That is, the argument assumes (without showing) that certification was intended to be a condition of the exemption and then explains the distance between that intention and the actual statutory language as a lack of precision. If instead we look first at what the statute says and attempt to learn from that language what the legislative intention was, we find that Congress precisely stated three conditions for the exemption in what is now section 893(a) and then precisely stated, in what is now section 893(b), a distinct obligation of the Secretary of State. The text gives no indication of the intention that respondent assumes, and bears no imprecision in expressing its evident intention.

3. *Treating State Department certification as a prerequisite to the exemption is at odds with the purpose of the statute.*

Respondent argues that allowing a qualifying employee to obtain the exemption without State Department certification makes that certification "non-mandatory", whereas the statute does admittedly use mandatory language (i.e., "The Secretary of State *shall* certify to the Secretary of the Treasury" (emphasis added)). However, the only mandate in the statute is directed to the Secretary of State. That is, there is no language in the statute mandating that the taxpayer "shall obtain" a certification before claiming the exemption, or mandating that the IRS "shall require" a certification before allowing the exemption. Rather, to facilitate claims of exemption, Congress mandated action by the Secretary of State, who "shall certify".

Our record shows that the Secretary of State certifies reciprocity only upon the application by a foreign country for such certification. That is, the State Department follows the mandate of section 893(b) only when a foreign country first applies for certification. It should be noted that the statute makes no provision for a foreign country to apply for such certification; that the statute does not conceive of a certification being issued *to* a foreign country;[19] and that the statute certainly does not condition the issuance of a certification upon an application. We assume that, in view of the complexity of the task of certifying income tax reciprocity of all the countries in which U.S. citizens work for U.S. consulates, the expedient of waiting for an application is practical—perhaps even inevitable. And even if this implementation of the mandate effectively permits the State Department to fail indefinitely to do what section 893(b) says it "shall" do, the income tax exemption of section 893(a) is not frustrated as long as certification is not treated as a prerequisite. But if certification were a prerequisite, and if an otherwise valid claim for exemption failed for the lack of certification, then

___

[19] In form, the State Department's eventual certification as to the UAE was—consistent with section 893(b)—directed to Treasury ("I hereby certify to the Secretary of the Treasury"). However, the certification (signed September 26, 2008) was promptly provided to the UAE on October 1, 2008, but was not transmitted to the Department of the Treasury until five months later, on March 10, 2009. In substance, the State Department seems to treat the certification as granted *to* the foreign country upon its application.

the failure of the State Department to make a certification unless and until it received a (non-statutory) application would preclude the exemption.

This dynamic is hard to reconcile with the congressional intention in 1935. There is no evidence of a congressional purpose to deny exemption until a foreign country had initiated and completed an exemption application process. The impulse behind the statute was not to reign in an overly generous IRS and use a State Department certification process to restrict exemptions. On the contrary, the subject of real interest to the Congress (and to both the State Department *and* the Department of the Treasury) (see *supra* pp. 196–197) was the adverse foreign tax consequences to U.S. consular employees that was resulting from the *lack* of a reciprocal U.S. income tax exemption. The congressional impulse was to loosen the situation, not to tighten it—i.e., to create a statutory exemption so that the prior administrative practice could continue and U.S. workers in foreign countries would not become subject to foreign taxes. It is possible that a legislature creating such an exemption would nonetheless establish procedures to limit it (e.g., requiring an application, and denying an exemption not duly applied for and granted); but the statute and the legislative history show no signs of that contrary impulse.

Treating the State Department's certification as separate from the conditions for exemption hardly "relegates subsection (b) to a mere administrative 'helpful hint'", as respondent suggests. On the contrary, in a matter concerning the application of U.S. law to foreign embassy staffs, Congress sensibly charged the State Department (not the IRS) with the front-line diplomatic responsibility of determining the reciprocity of foreign tax law; and it seems fair to assume not only that the State Department's certification of reciprocity will be the last word in virtually every case,[20] but also that the State Department's certification will greatly

---

[20] Since respondent admits that Mr. Abdel-Fattah did meet the qualifications of section 893(a) during the years in suit, we need not decide what standard of review would be adopted if one or both of the qualifications of section 893(a)(2) and (3) were in dispute. Likewise, we need not decide by what standard we would review a taxpayer's challenge of an actual certification of *non*-reciprocity—if in fact the State Department ever issues such negative certifications, which our record does not disclose. Neither do we decide whether the Commissioner could deny section 893(a) treatment by disputing the correctness of a section 893(b) certification that had been made by the State Department and had been relied on by an embassy employee.

simplify an embassy employee's claim of exemption and the IRS's ruling on that claim. Only where there is no certification will a dispute on the matter be at all likely.

4. *Potential difficulties with the statute as written do not warrant judicial correction of the statute*.

Respondent contends that several difficulties may result from this interpretation of section 893. He urges that in some circumstances the reciprocity determination may be difficult (for example, where the foreign country has a value added tax or user fees from which U.S. Embassy employees are not exempted, or where the determination requires treaty interpretation, or where the information necessary to make the determination may not be accessible to IRS agents or even to the taxpayer).[21] Respondent suggests that, in circumstances where there is no State Department certification, the statute as we interpret it—

• requires section 893 to be administered without the benefit of "State's expertise in the arena of international affairs";

• commits the reciprocity issue to the judgments of taxpayers as they file returns, to IRS personnel as they examine them, and to the several courts as the issues are litigated, so that uniformity of outcome among foreign employees from the same country is not assured; and

• fails to create an occasion for the State Department "to ensure that Americans working at embassies abroad receive equivalent exemptions * * * in their host countries" and "undercuts State's ability to ensure reciprocity".[22]

---

[21] We assume arguendo that such difficulties exist, though they are not demonstrated on our record. All that section 893 requires is a determination of "an equivalent exemption". Sec. 893(a)(2), (b). For this purpose, "an equivalent exemption" is an exemption equivalent to an "exempt[ion] from *taxation under this subtitle*". Sec. 893(a) (emphasis added). "[T]his subtitle" (of title 26, the Internal Revenue Code) is subtitle A, "Income Taxes". Inquiry into reciprocity as to other taxes would therefore appear to be unnecessary. And where information necessary to a determination of reciprocity is not accessible, then the outcome would presumably be resolved by the operation of the burden of proof.

[22] Again, we assume arguendo that our interpretation has this disadvantage that respondent describes—i.e., it diminishes the role of section 893 certification as a means for ensuring tax exemption for U.S. consular employees in foreign countries. However, neither of the competing interpretations of section 893 bars the State Department from determining how a foreign country treats U.S. consular employees and informing the IRS. Rather, the State Department may do so on whatever schedule and by whatever means it desires; and if it finds non-reciprocity in a given country and so advises the IRS, then presumably the IRS will follow the State Department's conclusion and will rule adversely on claims by employees of that country's consulate.

These issues of diplomacy and tax administration might be reasons to prefer a rule that required State Department certification as a prerequisite to the income tax exemption. However, these considerations would be properly addressed to Congress as reasons to enact such a rule; and in the absence of such a rule, these considerations cannot alter our interpretation of the different rule that Congress actually enacted. If the rule that Congress enacted—which does not require State Department certification as a condition for claiming the exemption—is problematic for these reasons, then the problems can be addressed not by corrective interpretation but only by legislative amendment.

Respondent's position here has an ironic resemblance to the situation that existed in 1934. The Treasury Department had administratively granted an exemption that the statute did not provide, but Treasury came to realize the impropriety of its having done so. Resisting the State Department's urging that the administrative exemption be perpetuated, Treasury explained:

> The formulation of such policies is not within the province of the executive department of the government. * * *
>
> *   *   *   *   *   *   *
>
> This Department fully appreciates the difficulties and possible loss of revenue, to which you refer, as the result of any change in the practice heretofore adopted * * *. The question, however, is not one which addresses itself to administrative solution or which may properly be considered or determined by this Department on the basis of the benefits which might accrue to the United States by a continuation of such practice, but is one which involves the constitutional authority of this Department to grant exemptions from taxation except as directed by the lawmaking branches of the government.[23]

Now at issue is not the granting but the denying of the exemption. Denying the exemption where the State Department has not certified reciprocity could again be defended "on the basis of the benefits which might accrue to the United States", but that action must again be said to be "not within the province of the executive department of the government". The IRS can no more deny now an exemption on a condition that Congress did not impose than it could allow then an exemption that Congress had not granted.

---

[23] Letter from Treasury Department to the Secretary of State 4–5 (Aug. 7, 1934).

The statute as it stands does not require State Department certification, and we therefore hold in favor of Mr. Abdel-Fattah.

To reflect the foregoing,

> *An appropriate order will be issued, and decision will be entered under Rule 155.*