T.C. Memo. 2012-74

UNITED STATES TAX COURT

MARITZA FURIATTI NEWMAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ROBERT MECK COMFORT AND OSCARLINA CAMPOS COMFORT,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 25028-09, 1124-10.          Filed March 19, 2012.

        Ps were foreign citizens who worked in the United States at foreign
embassies whose countries had not been certified by the U.S. State
Department under I.R.C. sec. 893(b).  Claiming tax exemption for those
wages pursuant to I.R.C. sec. 893(a), Ps did not report their embassy wages
as income.  R issued notices of deficiency including the embassy wages as
income, and Ps filed petitions.  Before trial of these cases, this Court issued
its Opinion in <u>Abdel-Fattah v. Commissioner</u>, 134 T.C. 190 (2010), holding
against the IRS's interpretation of I.R.C. sec. 893(b).  As to Ps, the IRS later
conceded the I.R.C. sec. 893(b) issue and eventually conceded their cases
altogether.  Ps moved for administrative and litigation costs under I.R.C.
sec. 7430.

**Held**: Notwithstanding our Opinion in Abdel-Fattah, R's position in these cases, though incorrect, was "substantially justified" under I.R.C. sec. 7430(c)(4)(B)(i), so that Ps may not recover costs.

A. Duane Webber and Kathleen A. Agbayani, for petitioners.

Karen Lynne Baker and William J. Gregg, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge: These cases are now before the Court on motions for costs filed pursuant to Rule 231 and section 7430.[1] The procedural predicate for those motions is as follows: On the dates given in the table below, respondent, the Internal Revenue Service ("IRS"), issued a notice of deficiency ("NOD") to Maritza Furiatti Newman and an NOD to Robert Meck Comfort and Oscarlina Campos Comfort; petitioners filed petitions in this Court; the IRS filed its answers; after the cases were calendared for trial, but before trial, the parties filed

---

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to sections of the Internal Revenue Code of 1986 (codified in 26 U.S.C., and referred to herein as "I.R.C." or "the Code"), as amended, in effect for the years at issue.

stipulations of settled issues; and petitioners filed their motions for costs. The dates of these actions were as follows:

| Action | Newman No. 25028-09 | Comfort No. 1124-10 |
|---|---|---|
| NOD | Aug. 6, 2009 | Oct. 20, 2009 |
| Petition | Oct. 20, 2009 | Jan. 13, 2010 |
| Answer | Dec. 16, 2009 | Mar. 1, 2010 |
| Stipulation of settled issues | Dec. 14, 2010 | Nov. 23, 2010 |
| Motion for costs | Jan. 28, 2011 | Jan. 31, 2011 |

The issue for decision is whether the IRS's position in these cases was "substantially justified" for purposes of section 7430(c)(4)(B)(i). We hold in favor of the IRS.

## Background

Petitioners' employment and tax reporting

Throughout the years at issue (i.e., 2002 through 2007 for Ms. Newman and 2003 through 2007 for the Comforts), Mrs. Comfort and Ms. Newman were Brazilian citizens and were employed at the Brazilian Aeronautical Commission (the "Commission"), which was a part of the Brazilian Embassy. Both Mrs. Comfort and Ms. Newman lived in the United States pursuant to diplomatic A-2 immigrant

visas that were renewed every two years on the basis of their continued employment at the Commission. They both worked as bilingual technical assistants at the Commission under annual renewable employment contracts.

For the years at issue petitioners did not report the wages paid by the Commission ("Commission wages") on their Federal income tax returns, instead taking the position that the Commission wages were exempt from tax under section 893(a) and, therefore, that petitioners had no income tax liabilities associated with those wages.

The IRS's initiative concerning employees of foreign embassies

In 2006 the IRS conducted an initiative in connection with the employees of foreign embassies, including the Embassy of Brazil. (Also included were employees of the Embassy of the United Arab Emirates. See Abdel-Fattah v. Commissioner, 134 T.C. 190 (2010).) The IRS investigated several issues, including the exclusion of embassy wages pursuant to section 893(a). Section 893(b) requires the U.S. Secretary of State to certify to the Secretary of the Treasury the names of the foreign countries that grant to employees of the U.S. Government an exemption that is equivalent to the exemption under section 893(a), and the IRS took the position that this certification was a prerequisite for exemption under section 893(a).

Engagement of counsel

In July 2008 petitioners' counsel agreed to represent the Commission's A-2 visa holders with respect to the section 893 income tax exemption issues that had begun to arise for the Commission's employees. Since the Commission and petitioners could not afford to pay counsel's customary fee for this work, counsel agreed to represent petitioners and other A-2 visa holders during the administrative phase for a limited fee (to be paid by the Commission) and thereafter on a pro bono basis.

Administrative proceedings

The IRS issued to Ms. Newman (on June 30, 2008) and to the Comforts (on December 2, 2008) notices of proposed adjustment for their taxable years at issue. The proposed adjustments included petitioners' Commission wages as taxable income because the IRS's position at the time was that the Commission wages did not qualify for exemption under section 893(a).

In response to the notices of proposed adjustment, petitioners' counsel submitted to the IRS Office of Appeals protests to the notices of proposed adjustment. The protests argued that petitioners' Commission wages were exempt under section 893(a) because, they contended, section 893(a) stands alone, and petitioners' situations satisfied all of the conditions in section 893(a).

On February 27, 2009, in accordance with section 893(b), the U.S. Department of State certified to the Secretary of Treasury that Brazil does not tax the wages, fees, or salaries of non-Brazilian employees of the U.S. Mission to Brazil and that such employees perform services of a character similar to those performed by employees of the Embassy and Consulates of Brazil in the United States. The IRS maintained, however, that the Secretary of State's certification applied only prospectively, i.e., from the date of the certification, and therefore the certification was not effective for petitioners' tax years at issue.

The IRS, in August 2009 (for Ms. Newman) and October 2009 (for the Comforts), brought an end to petitioners' administrative proceedings by issuing notices of deficiency to petitioners for the taxable years at issue. In the notices of deficiency the IRS determined that since Ms. Newman and Mrs. Comfort were residents of the United States, their personal service wages from the Brazilian Embassy (i.e., the Commission wages) were taxable by the United States. Accordingly, the IRS determined that their Commission wages were taxable by the United States and that petitioners had resulting deficiencies.[2]

---

[2]The IRS determined in the notices of deficiency that Ms. Newman owed a balance of $40,039 in tax, $9,009 in sec. 6651(a)(1) additions to tax, and at least $4,978 in sec. 6651(a)(2) additions to tax, and that the Comforts owed a balance of $81,060 in tax and $16,212 in sec. 6662(a)(2) penalties.

Commencement of litigation

Petitioners filed timely petitions for redetermination--Ms. Newman on October 20, 2009, and the Comforts on January 13, 2010--asserting that their Commission wages were exempt from tax. Petitioners resided in Maryland when they filed their petitions. Petitioners were self-represented when they filed their petitions, because counsel had evidently withdrawn from the representation by that time.

The IRS answered Ms. Newman's petition on December 16, 2009, and the Comforts' petition on March 1, 2010. In its answers the IRS continued to deny that the Commission wages were exempt from tax. The Court set Ms. Newman's case for trial to begin in Washington, D.C., during the week of June 21, 2010, but on June 9, 2010, the Court granted the IRS's motion to continue generally Ms. Newman's case. The Court set the Comforts' case for trial during the Court's trial session beginning on November 29, 2010, in Washington, D.C. No trial ever occurred in either of the cases.

Proceedings in Abdel-Fattah

As we have noted, the IRS had raised the section 893 exemption issue with employees of multiple embassies. The issue was before this Court in a case brought by an employee of an embassy of the United Arab Emirates--Abdel-Fattah v. Commissioner, 134 T.C. 190 (2010)--in which the parties cross-moved for summary judgment. (The taxpayer's counsel in Abdel-Fattah was not the same counsel who represents petitioners in these cases.) We held oral argument on the cross-motions in Abdel-Fattah on March 18, 2010; and in that argument the Court did not suggest to the IRS that its position regarding section 893 was unreasonable. On the contrary, we said to the taxpayer's counsel:

> [T]he support for saying that [section 893(b) is] a condition * * * is that it follows on immediately, which is not nothing, and addresses the same subject matter as the first part, the conditions, two of the conditions anyway, and says that those things shall be certified by the Secretary * * *. [I]f we want to do a plain meaning analysis we have to make sure that we give meaning to all of the words and all the sentences and all the subsections, but one criticism of [petitioner's] position would be that it reads [subsection (b)] almost out of the statute. [Tr. at 16-17.]

Nonetheless, the IRS's position did not prevail. On April 27, 2010, this Court issued an Opinion in Abdel-Fattah v. Commissioner, 134 T.C. 190, holding that income of an employee working for a foreign embassy in the United States is exempt from U.S. tax if the requirements of section 893(a) are satisfied, and that

certification from the Secretary of State under section 893(b) is not a prerequisite for exemption under section 893(a).

The decision in <u>Abdel-Fattah</u> became final on October 11, 2010, when the IRS did not file a notice of appeal.[3]

Re-entry of counsel

On December 1, 2009, Ms. Newman re-engaged as counsel the same lawyers who had assisted her in her administrative proceedings but had not filed her petition in this litigation. On April 30, 2010, three days after the issuance of the <u>Abdel-Fattah</u> Opinion, petitioners' counsel filed their entry of appearance in <u>Newman</u>. On August 26, 2010, the IRS informed petitioners' counsel that it intended to concede in <u>Newman</u>.

Less than a month later, on September 20, 2010, Mr. and Mrs. Comfort re-engaged as counsel those same lawyers. Counsel filed their entry of appearance in <u>Comfort</u> three days later on September 23, 2010.

The record does not show the reason for petitioners' counsel's exit from and re-entry into these pro bono cases.

---

[3]Although the Opinion in <u>Abdel-Fattah v. Commissioner</u>, 134 T.C. 190 (2010), was issued on April 27, 2010, it was necessary for the parties to make computations under Rule 155. The Court did not enter its decision until July 12, 2010.

IRS concessions

Consistent with a later-announced action on decision ("AOD") discussed below, IRS counsel in the present cases began investigating whether petitioners met the requirements of section 893(a). The IRS requested documents in both Newman (in March 2010) and Comfort (in September 2010).

On July 9, 2010, counsel for the parties met to discuss a stipulation of facts in Newman, at which time petitioners' counsel gave to the IRS information that was relevant to the disputed issues in Newman. As is noted above, on August 26, 2010, the IRS's counsel advised petitioners' counsel that the IRS was conceding the Newman case.

Similarly, petitioners' counsel gave to the IRS information that was relevant to the disputed issues in Comfort on October 28, 2010. Four days later, on November 1, the IRS's counsel informed the Comforts that the IRS intended to concede its case in Comfort.

On November 22, 2010, the Chief Counsel of the IRS published an AOD with respect to Abdel-Fattah, advising that "the Service will no longer take the position that the certification required by the Secretary of State in I.R.C. § 893(b)

is a prerequisite for the tax exemption provided for in I.R.C. § 893(a)."[4]  Action on

Decision 2010-04 (Nov. 22, 2010).

The next day--November 23, 2010--the parties in Comfort filed a stipulation

of settled issues, and the parties in Newman filed such a stipulation on

December 14, 2010.

Motions for costs

In late January 2011, petitioners filed motions for awards of reasonable

litigation and administrative costs.  The motions request costs for the services their

counsel performed during the administrative and litigation proceedings in their

respective cases.

Petitioners argue that they are entitled to awards of costs under section 7430

because they were prevailing parties and the IRS lacked substantial justification to

---

[4]The AOD also stated:

However, the employee has the burden of proof to establish the
enumerated conditions of I.R.C. § 893(a) are met.  In disposing of
cases where the State Department has issued an I.R.C. § 893(b)
certification, the Service will apply the certification to all taxable years
for which the facts and law are the same as those upon which the
certification was based.  In cases where the State Department has not
issued an I.R.C. § 893(b) certification, the Service will continue to
challenge a non-U.S.-citizen embassy employee's claim of exemption
if the employee fails to establish to the Service that the conditions of
I.R.C. § 893(a)(2) and (3) are met as to that employee. [Action on
Decision 2010-04 (Nov. 22, 2010).]

deviate from the plain language of section 893. Petitioners rely on our Opinion in Abdel-Fattah v. Commissioner, 134 T.C. 190 (2010), to support their contention. In addition petitioners cite the fact that the IRS did not appeal the decision in Abdel-Fattah and that the IRS eventually conceded its position in petitioners' cases as well as several other similar cases.

The IRS responds by arguing first that petitioners did not incur any costs associated with their proceedings and, therefore, are not entitled to an award under section 7430. Alternatively, the IRS argues that petitioners were not prevailing parties as required by section 7430 because the IRS's position that section 893(b) was a prerequisite for exemption under section 893(a)--although ultimately held incorrect--was substantially justified.

Discussion

I.    Operative legal principles

    A.    Section 7430 in general

In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, the "prevailing party" may be awarded reasonable administrative and litigation costs incurred in connection with the proceeding. Sec. 7430(a). Costs incurred include fees paid or incurred for the services of an attorney in connection

with the proceeding. See sec. 7430(c)(1)(B)(iii); 26 C.F.R. sec. 301.7430-4(b)(1)(iv), Proced. & Admin. Regs. The Court may award reasonable attorney's fees for pro bono legal services, even though a taxpayer does not "incur" those fees. Sec. 7430(c)(3)(B).

To recover incurred costs, the taxpayer: (1) must be the "prevailing party", sec. 7430(a); (2) must have exhausted administrative remedies, sec. 7430(b)(1); and (3) must not have protracted the proceedings unreasonably, sec. 7430(b)(3). To qualify as a "prevailing party", the taxpayer: (1) must substantially prevail with respect to the amount in controversy or the most significant issue or set of issues presented, sec. 7430(c)(4)(A)(i); and (2) must meet the timing and net worth requirements of the first sentence of 28 U.S.C. section 2412(d)(1)(B), incorporated by reference in section 7430(c)(4)(A)(ii).

Most notably however, a taxpayer will nevertheless fail to qualify as the "prevailing party" if the IRS can establish that its position in the proceedings, though unsuccessful, was "substantially justified". Sec. 7430(c)(4)(B)(i). By denying costs where the IRS's unsuccessful position was"substantially justified", section 7430 resembles 28U.S.C. section2412(d)(1)(A)[5] and distinguishes itself

---

[5]The Equal Access to Justice Act ("EAJA") provides for awards of fees and costs against the United States, in cases other than tax cases covered by

(continued...)

from some other fee-shifting statutes, in comparison with which section7430 is not at all generous.  By contrast, Rule54(d)(1) of the Federal Rules of Civil Procedure as a general rule allows costs other than attorney's fees to the prevailing party as a matter of course.[6]  As to awards of attorney's fees, section 7430 does not, like the Fair Labor Standards Act, provide that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action", 29 U.S.C. sec. 216(b) (emphasis added); nor does section 7430, like the Employee Retirement Income Security Act ("ERISA"), provide that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"), 29 U.S.C.

---

[5](...continued)
section 7430.  See 28 U.S.C. sec. 2412(e) (2006) ("The provisions of this section shall not apply to any costs, fees, and other expenses in connection with any proceeding to which section 7430 of the Internal Revenue Code of 1986 applies"). Like section 7430, the EAJA denies attorney's fees if "the court finds that the position of the United States was substantially justified".  28 U.S.C. sec. 2412(d)(1)(A).

[6]See United States ex rel. Ritchie v. Lockheed Martin Corp., 558 F.3d 1161, 1172 (10th Cir. 2009).  This general rule of Fed. R. Civ. P. 54(d)(1)--that "costs * * * should be allowed to the prevailing party" (emphasis added)--applies "[u]nless a federal statute * * * provides otherwise", so that the limits of section 7430 apply not only in the Tax Court but also in Federal tax litigation in the district courts.

sec. 1132(g)(1) (emphasis added).[7]  Rather, Congress has directed that no costs (including attorney's fees), however reasonably and necessarily incurred, will be awarded to a winning taxpayer if the IRS's position was "substantially justified".  Sec. 7430(c)(4)(B)(i).

The IRS agrees that petitioners (1) have substantially prevailed with respect to the amount in controversy and with respect to the most significant issue in the action, (2) meet the net worth requirements of 28 U.S.C. section 2412(d)(2)(B), (3) exhausted the administrative remedies that were available to them, and (4) did not unreasonably protract the administrative or judicial proceedings.  Accordingly, the only issue remaining with regard to petitioners' eligibility for reasonable fee awards is whether the IRS's position in the proceeding was substantially justified.

B.     Substantial justification in particular

The IRS's position is substantially justified if, based on all the facts and circumstances of the case, it acted reasonably, that is, if the IRS's position had a reasonable basis in both law and fact.  Pierce v. Underwood, 487 U.S. 552, 563 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), aff'd, 861 F.2d 131 (5th Cir. 1988).  The relevant inquiry is whether the IRS knew or should have known that its

_____

[7]See also 42 U.S.C. sec. 2000e-5(k) (Title VII; "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party * * * a reasonable attorney's fee (including expert fees) as part of the costs").

position was invalid when adopted, given the facts available and any legal precedent related to the case. Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), aff'g T.C. Memo. 1994-182; Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 443 (1987); Prouty v. Commissioner, T.C. Memo. 2002-175. The Supreme Court has warned that courts must "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-422 (1978). Or, as the Court of Appeals for the D.C. Circuit put it, "courts need to guard against being 'subtly influenced by the familiar shortcomings of hindsight judgment.'" Taucher v. Brown-Hruska, 396 F.3d 1168, 1173 (D.C. Cir. 2005) (quoting Beck v. Ohio, 379 U.S. 89, 96 (1964)).

The IRS's position may be incorrect but nevertheless substantially justified "'if a reasonable person could think it correct'." Maggie Mgmt. Co. v. Commissioner, 108 T.C. at 443 (quoting Pierce, 487 U.S. at 566 n.2). The IRS's eventually conceding or even losing a case does not establish that its position was unreasonable, but its concession does remain a factor to be considered. Sokol v. Commissioner, 92 T.C. 760, 767 (1989).

As to matters of fact, in order for a position to be substantially justified, "substantial evidence" must exist to support it. Pierce, 487 U.S. at 564. "'[Substantial evidence] does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. at 564-565 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The IRS is not obliged to concede adjustments whose resolution requires factual determinations until it has received and had a reasonable period of time to verify adequate substantiation for the matters in issue. See Nguyen v. Commissioner, T.C. Memo. 2003-313; Huynh v. Commissioner, T.C. Memo. 2002-110.

As to matters of law, "[g]enerally, the Commissioner's position is considered substantially justified when an issue is one of first impression." Vines v. Commissioner, T.C. Memo. 2006-258 (citing TKB Int'l, Inc. v. United States, 995 F.2d 1460, 1468 (9th Cir. 1993)). In particular, a position is substantially justified when it is "a case of first impression," it is "not contrary to any published decision", and a "reasonable person [could not] say that it lacked colorable justification." Estate of Wall v. Commissioner, 102 T.C. 391, 394 (1994).

The mere fact that a case is one of first impression will not establish substantial justification when the IRS's position is in conflict with the "clear and

unequivocal" language of the statute such that the IRS's interpretation of that statute is clearly unreasonable. Nalle v. Commissioner, 55 F.3d at 193. For instance, if the IRS's interpretation of a statute "'lacked any ligaments of fact' and was 'clearly erroneous' as a matter of law", Portillo v. Commissioner, 988 F.2d 27, 29 (5th Cir. 1993) (quoting Portillo v. Commissioner, 932 F.2d 1128, 1133 (5th Cir. 1991)), rev'g T.C. Memo. 1992-99, or if "[n]one of the arguments offered by the IRS during the various stages of the litigation had even a chance of succeeding", Beaty v. United States, 937 F.2d 288, 292-293 (6th Cir. 1991), such an interpretation would violate the "clear and unequivocal" language of the statute and would not be substantially justified.

However, the courts have not held that a Government position that is later determined to be contrary to the plain meaning of a statute necessarily fails, for that reason, to be substantially justified. Rather, if on a question of first impression the Government takes a position that fails to give effect to the plain meaning of the statute but that is still colorable, its position, though unavailing, may be substantially justified and may not warrant an award of fees to its opponent. In Nalle v. Commissioner, 55 F.3d at 190-191, for example, the Court of Appeals for the Fifth Circuit had held that the regulation whose validity the IRS defended and on which the IRS relied "contradicted the plain meaning of [I.R.C.] § 48"; but the court also

held, id. at 194, that, for purposes of section 7430, the IRS's position was nonetheless substantially justified.[8] Similarly, after the Supreme Court held that a "literal reading of the" statutory language supported the conclusion adverse to the Government and that "[t]he text of [18 U.S.C.] § 209(a) thus indicates that employment status is an element of the offense", Crandon v. United States, 494 U.S. 152, 159 (1990), the Court of Appeals for the Fourth Circuit (to which an appeal would lie in either Newman or Comfort) nonetheless held, for purposes of the Equal Access to Justice Act, see supra note 5, that before the Supreme Court had so announced, the Government's contrary position was nonetheless "substantially justified", see United States v. Paisley, 957 F.2d 1161, 1170 (4th Cir. 1992). A "plain meaning" analysis may be a very important consideration in

---

[8]The Court of Appeals in Nalle addressed the question "whether the Commissioner * * * knew or should have known that her position was invalid at the onset of the litigation", 55 F.3d at 191 (emphasis added), i.e., at a time when the circumstances were equivalent to those in these cases now before us: At "the onset of the litigation" in Nalle, when the petition was filed in the Tax Court, there was no opinion of any court addressing the issue, and the IRS's regulation and its litigating position contradicted the plain meaning of the statute. The Tax Court later issued an Opinion upholding the regulation and the IRS's position, which the Court of Appeals reversed, see Nalle v. Commissioner, 99 T.C. 187 (1992), rev'd, 997 F.2d 1134 (5th Cir. 1993); but that pro-IRS Tax Court Opinion did not exist as of "the onset of the litigation" and therefore could not be cited as an authority giving rise to substantial justification.

determining whether the Government's position is substantially justified, but it is not always the only consideration.

The foregoing principles must be applied to the IRS's position on section 893(a).

C.    Section 893

The primary substantive issue in petitioners' administrative and judicial proceedings was whether petitioners' Commission wages were exempt from taxation under section 893.  Section 893(a) and (b) provides:

SEC. 893(a).  Rule for Exclusion.--Wages, fees, or salary of any employee of a foreign government or of an international organization (including a consular or other officer, or a nondiplomatic representative), received as compensation for official services to such government or international organization shall not be included in gross income and shall be exempt from taxation under this subtitle   if--

(1) such employee is not a citizen of the United States, or is a citizen of the Republic of the Philippines (whether or not a citizen of the United States); and

(2) in the case of an employee of a foreign government, the services are of a character similar to those performed by employees of the Government of the United States in foreign countries; and

(3) in the case of an employee of a foreign government, the foreign government grants an equivalent exemption to employees of the Government of the United States performing similar services in such foreign country.

      (b)  Certificate by Secretary of State.--The Secretary of State shall certify to the Secretary of the Treasury the names of the foreign countries which grant an equivalent exemption to the employees of the Government of the United States performing services in such foreign countries, and the character of the services performed by employees of the Government of the United States in foreign countries.

That is, section 893(a) provides an exclusion on three conditions, and section 893(b) provides that the Secretary of State shall certify two of the conditions.

Before this Court's Opinion in Abdel-Fattah v. Commissioner, 134 T.C. 190 (2010), there had been no published opinions precluding the IRS's position that section 893(b) certification was a prerequisite to an exemption under section 893(a). However, in Abdel-Fattah we concluded "that under the plain language of the statute, certification [by the Secretary of State] is not a condition or prerequisite of the exemption".  Id. at 204.

Under section 893 as we interpret it (and as petitioners have always contended it should be interpreted), deciding whether a taxpayer is entitled to exemption from income tax under section 893 still requires a factual inquiry--i.e., to determine whether the conditions in section 893(a) have been met.

II.    Analysis

    A.    The two phases of these cases

To determine "substantial justification", we must identify the point at which the IRS first took the position that petitioners' Commission wages were not exempt from income tax under section 893, and we must then decide whether this position from that point forward was substantially justified. Maggie Mgmt. Co. v. Commissioner, 108 T.C. at 442. When determining whether the IRS's position was substantially justified as of a given date, a significant factor is whether the taxpayer had presented all relevant information and legal arguments supporting the taxpayer's position. 26 C.F.R. sec. 301.7430-5(c), Proced. & Admin. Regs.

In these cases the IRS maintained from the start that petitioners' Commission wages were not exempt under section 893, and the IRS did not deviate from this position until the parties settled. As proceedings in petitioners' cases were taking place, this Court issued an Opinion and decided Abdel-Fattah, which clarified the Tax Court's interpretation of section 893 and provided petitioners with new legal authority to support their position. Before the issuance of Abdel-Fattah, there was no legal authority interpreting section 893. Given petitioners' reliance on Abdel-Fattah as new legal authority, it is appropriate to

analyze the reasonableness of the IRS's position in two phases--i.e., before the Abdel-Fattah Opinion and after.

      B.     Substantial justification for the IRS's pre-Abdel-Fattah position

Since the legal issues in Abdel-Fattah and petitioners' cases were the same (i.e., whether section 893(b) is a prerequisite for exemption under section 893(a)), the position that the IRS took in Abdel-Fattah is indicative of its position in petitioners' cases. Accordingly, if the IRS's arguments in Abdel-Fattah were reasonable, then its position in petitioners' cases was also reasonable, at least until the time that we issued our Opinion in Abdel-Fattah. That case raised an issue of first impression. Although we did not ultimately agree with the IRS's position, that position had a colorable justification, based on its arguments as to (i) policy objectives and (ii) the proximity of subsections (a) and (b) of section 893.

      1.     Policy objectives

The IRS considered section 893 as a whole and argued that the purpose of including subsection (b) in section 893 was to require the U.S. State Department's certification as a prerequisite for the income tax exemption under subsection (a). We noted that the Code includes other provisions that do make a Government official's certification a prerequisite to a tax benefit; and we observed that these provisions reflect a legislative choice not to "assign[] to the tax collector the task

of making, in the first instance, difficult determinations that may be well outside his knowledge or expertise" but instead to "commit[] the determination to the agency with the relevant subject-matter expertise." Abdel-Fattah v. Commissioner, 134 T.C. at 202-203. In that connection, we noted the IRS's contention that granting the section 893(a) tax benefit without the section 893(b) certification "requires section 893 to be administered without the benefit of 'State's expertise in the arena of international affairs'", id. at 209; and we acknowledged that "[t]hese issues of diplomacy and tax administration might be reasons to prefer a rule that required State Department certification as a prerequisite to the income tax exemption", id. at 210.[9] We ultimately determined that there is no basis to impute such reasoning to the Congress that enacted section 893, but we cannot say that the argument was unreasonable.

## 2. The proximity of subsections (a) and (b)

As we noted at oral argument, the criteria for exemption under section 893 are stated in subsection (a), and the requirement that the Secretary of State certify

---

[9]In De Allende v. Baker, 891 F.2d 7, 12 (1st Cir. 1989), the Court of Appeals for the First Circuit similarly noted the Government's proffered policy considerations in holding that the Government's position, which was contrary to the plain meaning of 8 U.S.C. section 1182(a)(27) and that therefore failed on the merits, see De Allende v. Shultz, 845 F.2d 1111 (1st Cir. 1988), was nonetheless substantially justified for purposes of the EAJA.

two of those criteria follows immediately in subsection (b)--which originally was in the same subsection. Thus, the IRS's position did not invent a limitation out of whole cloth but rather urged that the certification--which certainly is provided for in section 893(b)--is a prerequisite to the benefit in section 893(a)--to which the certification certainly relates. The IRS's position exaggerated the significance of this arrangement in interpreting the statute, but it was not wrong to urge that this arrangement be taken into account. The plain meaning of statutory language is not determined without regard to its context; rather, "[t]he plain meaning of the statute's words, enlightened by their context", Edwards v. Aguillard, 482 U.S. 578, 594 (1987) (emphasis added), governs our interpretation. We ultimately determined that the proximity of subsections (a) and (b) did not vitiate the benefit conferred in section 893(a) in the absence of the certification called for in section 893(b), so that the arrangement of the statutory language does not overcome what is otherwise its plain meaning; but the proximity of these provisions did help to justify the IRS's contrary argument.

Since the IRS's position in Abdel-Fattah was colorable, it was also substantially justified. See Estate of Wall v. Commissioner, 102 T.C. at 394; see also Nalle v. Commissioner, 55 F.3d at 193-194. Since the IRS's position in Abdel-

Fattah and its position in petitioners' cases were the same, the IRS's pre-Abdel-Fattah position in petitioners' cases was substantially justified.

C.      Substantial justification for the IRS's post-Abdel-Fattah position

When Abdel-Fattah was issued, the situation changed.  The issue was no longer one of first impression, and the IRS's position was now contrary to a published Opinion, thus making the IRS's position newly susceptible to the criticism that it lacked substantial justification.  It took several months (four months in Ms. Newman's case and six months in the Comforts') after the decision in Abdel-Fattah for the IRS to concede these cases, and petitioners argue that the IRS's position was not substantially justified during these periods.  However, we find the IRS's post-Abdel-Fattah handling of these cases reasonable--and we therefore find its position substantially justified--for two reasons:

1.      Sufficient time to concede the section 893(b) issue

Just as the IRS must be given a reasonable amount of time to change its position when it becomes aware of new pertinent facts in a case, see Nguyen v. Commissioner, T.C. Memo. 2003-313; Huynh v. Commissioner, T.C. Memo. 2002-110, so the IRS must be given time to reassess its position in light of new legal precedent.  We expect the IRS to administer the tax laws not ad hoc but uniformly. If it is to do so, then decisions about the positions it will take on legal issues must be

resolved centrally and not by various Chief Counsel attorneys handling various cases. These cases were among a group of cases arising from the IRS's initiative in connection with the employees of multiple foreign embassies. Coordinated decision-making necessarily requires time to present the issues to authorized officials and to let them make decisions.

Moreover, the decision whether to treat section 893(b) certification as a prerequisite to section 893(a) exemption was necessarily bound up with the decision whether to appeal Abdel-Fattah, but that appeal decision was not committed solely to the IRS. Rather, under 28 U.S.C. section 519, that decision required the involvement of the Department of Justice. We cannot criticize the IRS for allowing this process to take its course in Abdel-Fattah before conceding Newman and Comfort.

We issued our Opinion in Abdel-Fattah on April 27, 2010; and on August 26 and November 1, 2010--i.e., four and six months later--the IRS's counsel informed Ms. Newman and the Comforts that the IRS would concede the section 893(b) issue. That was a reasonable amount of time for the Government to decide to revise its position and concede this issue.

2.      Sufficient time to address the section 893(a) issue

Petitioners further criticize the IRS for taking several months after we issued our Opinion in Abdel-Fattah to confirm that petitioners satisfied the requirements of section 893(a). However, the IRS is not obliged to concede adjustments whose resolution requires factual determinations until it has received and had a reasonable period of time to verify adequate substantiation for the matters in issue. See Nguyen v. Commissioner, T.C. Memo. 2003-313; Huynh v. Commissioner, T.C. Memo. 2002-110.

Even though section 893(b) certification is not a prerequisite to section 893(a) exemption, petitioners still had the burden to prove that they satisfied the three conditions for an exemption set forth in section 893(a). See Rule 142; see also New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Ms. Newman did not substantiate her citizenship or employment information until July 9, 2010. Similarly, the Comforts did not substantiate Mrs. Comfort's citizenship or employment information until October 28, 2010.

Petitioners point out, however, that before the decision in Abdel-Fattah, the IRS asserted to petitioners and their counsel that the requirements of section 893(a) were not at issue. Consequently, the IRS did not seek confirmation that petitioners met those requirements. Petitioners urge that the IRS could and should have asked

for that information before it issued notices of deficiency or defended them in litigation.

For us to hold that the IRS's position was substantially justified is to hold that the IRS was entitled to assume that position in conducting investigations and determining deficiencies. Since we hold that the IRS was substantially justified in taking the position that section 893(b) certification is a prerequisite to exemption, the IRS was therefore not required to develop alternative positions before issuing notices of deficiency or answering petitions.

It is evidently true that the IRS did not challenge Mrs. Comfort's or Ms. Newman's citizenship or employment status before Abdel-Fattah, but this was natural because the IRS's position up to that point was that the Commission wages did not qualify for exemption under section 893(a) because section 893(b) had not been satisfied. Accordingly, under the IRS's pre-Abdel-Fattah position, whether petitioners satisfied the citizenship and employment requirements of section 893(a) was immaterial. Although the IRS could have investigated Mrs. Comfort's and Ms. Newman's citizenship or employment situation as additional or alternate grounds to support its position before Adbel-Fattah, the IRS was not unreasonable in declining to do so.

## Conclusion

Since we have determined that the IRS was substantially justified in both its pre-<u>Abdel-Fattah</u> and post-<u>Abdel-Fattah</u> positions, petitioners were not prevailing parties for purposes of section 7430(c)(4). Accordingly, petitioners are not entitled to an award of costs under section 7430.

<u>Appropriate orders and decisions will be entered</u>.